THE QUINCY HORSE RAILWAY & CARRYING COMPANY

v.

EDWARD F. GNUSE, BY NEXT FRIEND.

*Street Railroads—Negligence—Personal Injuries—Rate of Speed— Ordinance Regarding—Pleading—Care Required of Infant—Instructions.*

1. A limitation by city ordinance of the rate of speed at which street cars may be run, is not authority to run up to the limit regardless of existing circumstances and conditions.

2. It is proper to charge, in the same count, in an action against a street car company for personal injury, negligence in law as to rate of speed by exceeding the limit prescribed by ordinance, or negligence in fact by reason of circumstances and conditions existing and apparent at the time in question, and proof of either would sustain a finding for the plaintiff on the issue of negligence.

3. Upon the case presented, the jury were justified in finding that defendant's car was driven at an improper and negligent rate of speed, and that plaintiff (an infant) was not guilty of contributory negligence.

[Opinion filed September 20, 1890.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. WILLIAM McFADON, for appellant.

Mr. C. A. BABCOCK, for appellee.

What care is required of the driver of a team at any given place, to avoid injury to persons or property, depends upon

the surroundings and character of the locality.  What would be reasonable speed in an open country road would be gross negligence in a much frequented street of a city.  T. W. & W. R. R. Co. v. Harmon, 47 Ill. 298; Murray et al. v. McLean, 57 Ill. 378.

The law which prohibits the running of railroad trains at a greater speed than ten miles an hour in cities, is not a license to run at such speed in all cases.  If in some places within a city that would be a dangerous rate, it would be negligence to run at that speed.  The rate of speed must conform to the safety of the public at all places in a city where persons have an equal right to travel with the railroad company to run its trains.  Wabash Ry. Co. v. Henks, 91 Ill. 406.

It was the duty of defendant to have its car and team driven through Eighth street, where the injury complained of occurred, that being a street much frequented by the many children of the neighborhood, under reasonable control as to speed, and with care to look out ahead and to avoid injury to persons in the street, and if the driver saw the boy in time, or by the use of ordinary care in looking out ahead could have seen him in time to avoid injuring him and did not do so, the defendant was guilty of negligence.  Houston and T. Cent. R. Co. v. Symkins, 54 Tex. 615; Frick v. St. Louis, etc., R. R. Có., 6 Central Law Journal, 317; Frick v. St. Louis, etc., R. R. Co., 15 Central Law Journal, 191.

And in the case last above cited an instruction restricting the liability to the conduct of the employes after the child was discovered is expressly condemned, citing Baltimore and C. R. R. Co. v. Trainor, 33 Md. 542; Keyser v. Chicago, etc., R. R. Co. (Mich.) 23 N. W. Rep. 311.

A careful lookout must be maintained in the direction in which a train is moving in places where people, and especially children, are likely to be upon the track.  Townley v. Chicago, etc., R. Co., 53 Wis. 626; Johnson v. Chicago & N. W. R. Co., 56 Wis. 274; Smith v. Atchison, etc., R. R., 13 Central Law Journal, 118.

Persons driving teams with cars or other vehicles through the streets of a city should be required to maintain a much

more careful watch ahead than employes of a railroad com-
pany, for the streets are used by vehicles and foot passen-
gers with equal right, and people may cross the streets at any
point without trespassing.

In the case of Schmidt et al. v. Sinnot, 103 Ill. 160, the
rapid driving of defendants in Jersey street in the city of
Quincy was the gist of the negligence charged. A verdict
was found in the Adams Circuit Court and confirmed by this
court upon appeal, and the decision of this court was affirmed
by the Supreme Court in the report above cited. The opin-
ion does not discuss the facts, and as the case was affirmed, no
opinion was published from this court, but enough appears to
show that the girl attempted to cross the street not at a cross-
ing, and the defendants, driving at a high rate of speed, ran
her down, and they were held liable for doing so.

Moreover, in the case last mentioned it appears that the girl
ran directly across the street and because of the speed of the
defendants' team it was impossible to avoid running upon her.
The girl was much older than the boy plaintiff here, and could
have looked and seen the horse and buggy coming. The
defendant was there found guilty of negligence because the
speed was too great for prompt control. In the case before
the court the speed, great as it was, could have been con-
trolled, only the driver wholly failed to attempt to control it.
The negligent speed was supplemented by carelessness.

If the driver of defendant's car could, by the exercise of
ordinary care, have seen the boy, and by the same kind of care
could have avoided injuring him, it was negligence on his part
not to do so. T., P. & W. R. R. Co. v. Bray, 57 Ill. 514; O.
& M. Ry. Co. v. Stratton, 78 Ill. 88.

While the Supreme Court of this State has discussed facts
to show that when contributory negligence of the parents
has been alleged, no such negligence in fact appeared, that
court has never held that contributory negligence of the
parent or guardian will bar recovery by the child when too
young, or otherwise unable to take care of itself. At least,
we can find no such case. There is no evidence of negligence
on the part of the parents in this case, unless it be held negli-

gence *per se* to allow a child of six or seven years to be upon the street.

It is not negligence *per se* to permit children to play in the street. Kunz, Adm'r, v. City of Troy, N. Y. Court of Appeals, Vol. VI, No. 6, Central Reporter, page 493.

It is not unlawful, wrongful or negligent for children to play on the sidewalk. McGarry v. Loomis, 63 N. Y. 104, 108; McGuire v. Spence, 91 N. Y. 306; Chicago v. Keefe, 1 Western Rep. 350, 353.

At any rate, the question of the parents' negligence was fully and fairly submitted to the jury in this case by defendant's ninth instruction given.

A child was considered not negligent, and the negligence of the parent held not imputable to the child, in Galveston, H. & H. R. R. Co. v. Moore, 59 Tex. 64; Huff v. Ames, 16 Neb. 139.

Whether the defendant was guilty of negligence or the plaintiff of contributory negligence, are questions peculiarly for the jury, and having been fairly submitted, unless the verdict is plainly against the evidence, it will not be disturbed. Toledo, P. & W. Ry. Co. v. Eastburn, 54 Ill. 385.

The court will not disturb the verdict unless it appears clearly to be unsupported. Aurora F. Ins. Co. v. Eddy, 55 Ill. 213.

Where the evidence, though conflicting, is sufficient to sustain the verdict, it will not be disturbed. Fitch v. Zimmer, 62 Ill. 126; Robinson v. Parish, 62 Ill. 130. Where there is evidence from which the jury could properly find their verdict, it will not be disturbed, though the evidence may, in the opinion of the Supreme Court, justify a different result Toledo, W. & W. Ry. Co. v. Moore, 77 Ill. 217.

Where the plaintiff, a girl of seven years of age, was run over by a railroad car and had one leg cut off and her right hand so crushed as to cause the amputation of two fingers, besides being otherwise injured, a verdict of $8,100 was held not unreasonable. Chicago & Alton Railroad Company v. Murray, 71 Ill. 601.

Where a child five years of age, of weak mind, was ren-

dered hopelessly imbecile by the injury, $3,833.33 was held not excessive. Chicago & A. R. R. Co. v. Gregory, 58 Ill. 226.

In this case a thoroughly good arm of a boy of six or seven years of age is utterly ruined for life, and the hand crushed beyond use or appearance of a hand.

The value of a money verdict to one disabled by injury is the income to be derived from it. When a usual safe rate of interest is as now not to exceed five per cent per annum, the value of such verdict is not more than half what it was when most of the cases in Illinois upon excessive damages were decided. This boy, poor, and deprived of the chance to choose employment as a mechanic, after paying cost and expenses of this long litigation, will be fortunate indeed if he is able to derive from this verdict two hundred dollars per annum from which to derive his support from boyhood to age, or the education and special training for such an employment as his injured body will permit, in case he is fortunate enough to find an occupation or profession for which he is otherwise fitted.

The boy plaintiff's capacity at the time of the injury, what possibilities he has in a line of business not precluded by his injury, the extent of his injury and consequent incapacity, could be better judged by the jury who saw him, than from the testimony of any witnesses. The first jury fixed the damages at $6,500; the next at $4,133.33⅓; but it is fair to say that this last mentioned verdict was found without a word of argument as to the measure of damages, defendant's attorney having waived an argument, thereby cutting short the plaintiff's argument. The last jury found this verdict of $6,000 not only not excessive, but moderate as seen by the light of many decisions in the courts of the several States, and of which we cite a few.

Where a young man, thirty years of age, engaged in an employment having a regular system of promotion, and earning $540 a year, was permanently disabled, a verdict of $11,000 in an action for damages therefor, was held not to be excessive. Blair v. C. & N. W. R. R. Co., 43 Ia. 662. (1876.)

A verdict in favor of a laborer for $9,000 for an injury re-

sulting from negligence of a co-employe, attended with great bodily suffering, and causing disability for life, held (by a majority of the court) not excessive. Walter v. Chicago & C. R. R. Co., 38 Iowa, 33. (1874.)

A verdict of $9,500 in favor of a driver of a job wagon for painful personal·injuries occasioned by a defect in a wharf, held, not to warrant a reversal as exorbitant. "It is difficult to measure excessive pain against money." Campbell v. Portland Sugar Co., 62 Me. 552. (1873.)

Plaintiff at the time of the accident was a strong healthy man nineteen years old. The injury caused him excruciating pain and he was compelled to lose a portion of his ankle bone, and the joints of his ankle and his foot were stiffened, rendering him a cripple for life and unfit for manual labor, which was the only occupation for which he was qualified. Held that a verdict for $8,000 was not excessive. Henry v. Sioux City & P. R. Co. (Iowa), 193, N. W. Rep. 30, 945.

PLEASANTS, P. J. Late in the afternoon, June 13, 1884, appellee, a child then nearly seven years of age, was run over by one of appellant's cars, whereby, besides other injuries, his right arm was so broken and crushed as to be permanently and entirely useless. On the 16th of October, 1885, this suit was brought to recover damages therefor. It has been tried four times. Once the jury failed to agree, and twice found the issues for plaintiff. A judgment for him was reversed by this court and the cause remanded, for error in one of the instructions given. 26 Ill. App. 397. The last trial was had at the March term, 1889, resulting in a verdict for plaintiff for $6,000 damages, on which the judgment was rendered from which the present appeal is taken.

The city ordinance relating to the railway contains the provision that "the cars of said company shall not at any time be run at a greater rate of speed than is or may be customary upon similar street railways in other cities." In the first count of the declaration the duty of the defendant is averred to have been "to cause its cars to be drawn and conducted in a careful and safe manner, and in the way and manner and at

the rate of speed in use and customary in other cities upon similar horse railways, and to cause its cars to be moved and drawn carefully over and upon street crossings, and with due care and regard for the safety of children and other persons moving or being in and upon said Eighth street and street crossings in and across said Eighth street," etc.; and the breach alleged is that the car was driven "at a high and reckless rate of speed, and at a greater rate of speed than is usual or customary upon similar horse railways in other cities, and recklessly and negligently was driven along and upon said horse railway, and by reason of its rapid and unusual rate of speed, and without care and attention to the safety of the plaintiff," was driven upon and over him. In the second count the defendant's duty is averred to have been to cause its cars to be driven "at a reasonable rate of speed, and at no higher rate of speed than is usual and customary on similar horse railways in other cities, and to use all reasonable care and diligence with reference to the character of the place and surroundings of said cars, wherever the same may be upon said railway, to secure the safety of any and all persons who may be in and upon said Eighth street," etc.; and the breach alleged is that the car was driven "at a furious and reckless and unusual and unreasonable rate of speed, and in a careless and negligent manner." It also avers the duty to have been to cause the drivers to slacken speed at crossings, and to keep a careful lookout ahead and along the line, to avoid collisions and injury, and alleges the breach of these duties in this case, but the foregoing is all that needs to be referred to respecting the rate of speed. No evidence was offered to show the rate of speed by any direct comparison with what is the usual and customary rate upon similar horse railways in other cities.

It is insisted that this averment was not only material, but the gravamen of the charge, and its proof therefore essential to a rightful recovery; that without an ordinance limiting the rate of speed, negligence could not be predicated of any rate merely because of the rate.

We can not concur in this view of the law or of the dec-

laration. It is true that without such an ordinance negligence could not be predicated of any particular rate of speed, as matter of law, but it might be as matter of fact. A limitation of the rate by ordinance is not authority to run up to the limit, regardless of existing circumstances and conditions. It was competent for plaintiff to allege in the same count, negligence in law as to the rate of speed by exceeding the limit so prescribed, or in fact by reason of the circumstances and conditions existing and apparent at the time; and proof of either would sustain a finding for the plaintiff upon the issues of negligence. The characterization of the rate as unreasonable and in excess of the rate prescribed, does not oblige the plaintiff, in order to maintain that issue on his part, to prove that it was both unreasonable and in excess of that rate. Negligence or a want of due care as to the speed, is the gravamen of the charge, and is proved by showing either. In that case the other is not matter of essential description and may be treated as surplusage. It would hardly be contended that a failure to prove under the second count that the rate was " furious " as well as "reckless, unusual and unreasonable," would be fatal.

Appellant's railway was laid on Eighth street, running north and south. It crossed Jefferson street which runs in a level, narrow valley, east and west. Appellee's father kept a store on the southwest corner of this intersection fronting on Eighth. At the street edge of the sidewalk before the door was a water trough, eight feet in length. On the occasion of the accident in question plaintiff had been standing on the street side of the trough, upon the plank bridge over the gutter, at a point twenty-five or thirty feet south of the south crossing, squirting water from the pipe that fed the trough upon a couple of girls passing on the sidewalk. One of them clapped her hands, stamped her foot, and as the witnesses express it " made for him." To escape he ran into the street, southeast, running sideways, with his head turned over his right shoulder toward the girl, and so at a sharp angle came upon the track apparently without observing the car rapidly coming from the north, which ran over him.

So much of the facts is undisputed. But from the evidence as to where the car was when plaintiff started from the trough, and the points at which he was overtaken and struck and to which he was dragged, which is variant, it is contended on the one hand that he started almost if not quite abreast of the car, and got in its way so unexpectedly and quickly that the driver was without fault in not slowing or stopping in time to avoid the accident. On the other hand it is claimed that when he so started he was so far south of the car that the driver, by the exercise of that degree of care which the circumstances demanded, could have seen him, and from his course and the manner of his running should have apprehended the danger in time, by slowing or stopping, to avoid it.

We think the evidence on the whole clearly tends to show that when plaintiff so started the car and mules drawing it were a little north of the south crossing, which was, as we have said, twenty-five or thirty feet north of him; that he was then ten or eleven feet west of the west rail; and that he ran eighteen or twenty feet to the point where he was struck. If this were so plaintiff was nearly in front of the driver when he started, and the mules went in the neighborhood of sixty feet before overtaking him, a distance in which the speed of the car might easily have been slackened enough to admit of his crossing the track before them in safety.

It appears that although it was getting dusk, between seven and eight o'clock, there was no difficulty in recognizing persons across the street; that the neighborhood was thickly settled, largely by families residing on small lots, with little yard room, and consequently that the sidewalks and streets were the more freely used by children. The evidence showed that the driver had recently been drinking to some extent, and tended to show that he was then so much under the influence of liquor as to be made by it somewhat reckless and stupid; that he drove down the hill to Eighth street in a gallop, with his hat pulled down over his eyes, and did not slacken speed at the crossing, nor seem to know that anything unusual had occurred until after the plaintiff was struck. The witnesses say that the mules suddenly spread when they got

to him, so that they could not see, and the jury were unable to determine whether he was hit by them or only by the car. His body or clothing was caught by a hook or rod connected with the brake, and he was dragged a distance of fifteen to seventeen feet.

It is clear that by this evidence the question of negligence in fact in respect to the speed of the car, and its relation to the injury, was fairly raised. The jury found, specially, that the mules were "galloping at the rate of eight or ten miles an hour," and might well have found that this rate, at the time and under the circumstances indicated, was reckless and unreasonable, and that if due care in that regard had been exercised the accident and injury would not have occurred; for if the speed had been appreciably less, that circumstance alone would have allowed the plaintiff to cross, and he would in fact have crossed the track before the mules reached the point of the collision.

So, also, as to the question of negligence on the part of the plaintiff. The jury found, and doubtless truly, that he had capacity and intelligence to understand "that it was dangerous for a person to attempt to run across the defendant's horse car track in front of a car in motion and moving thereon at the rate of speed at which the car in question was moving" at the time he was injured. In other words, if the car so moving was near enough to make it actually dangerous to attempt to run across the track in front of it, and he knew where the car was and how it was moving, then he knew the attempt was dangerous, and if in making it he was injured he could not rightfully recover damages from the company. Such, however, was not this case, as were some of those cited by counsel. Doubtless the law also is that if by the exercise of reasonable care he would have known it, then he ought to have known it, and he would have no better claim against the company than he would have had if he had actually known it. Whether this was such a case was a question for the jury. The proof is clear that there was no car within sight coming from the direction in which he was running or looking. The track ahead of him was clear. From their answers to several

of the special interrogatories it appears they supposed they were to find, upon the questions propounded, only in case they could do so positively from the evidence. Hence they say that whether he looked back to see if a car was coming from that direction and dangerously near, or whether he knowingly attempted to cross the track, or to go upon it, they do not know. So we understand them. There was no positive evidence that he did, or any that he did not, as to either.

Like the jury, we do not know what the fact was, but think it probable, from the circumstances, that he did not. When he spurted the water on the girls he was facing them, with his back to the track. Apparently the best way of escape from his threatening pursuer was the one he took. He was obliged to turn in order to run any way. Turning to the left and seeing that way open he took it, but kept his eyes on the girl, and probably had no other purpose or thought but to get to, and keep at a safe distance from her. Of course he might, in fact, have thought of the track and of the danger of being overrun, if he got on it, by a car from behind, and looked back, or rashly determined to take risk without so looking, rather than lose sight of the girl for an instant; but probably he did not, as counsel for the appellant claims. The inference of this probability, however, for it is only an inference, is drawn, not from direct evidence, for then it would not be an inference, but from the circumstances proved, which make it probable only as they make it reasonable; and that negatives the idea of negligence. Those circumstances are the age of the plaintiff, the danger apparently threatened, and the openness of the way he took to escape it. It would be unreasonable to expect a child so young and so threatened, with such a way of escape open, to bethink him of other and remoter and less apparent dangers, and turn his eyes from his pursuers to look for them from another quarter. Until he felt secure against that which was apparent and seemed to be imminent, he would have no thought of any other. The same would be true of men ordinarily careful, in the presence of proportionate danger apparently so imminent. It is to be observed also that plaintiff was not a trespasser upon defendant's right of

way. The company had no exclusive right of possession. City streets are intended for the use of children as well as of vehicles, not merely as ways by which to get to school, or upon errands of business, but as places in which to play, consistently with the rights of others, and subject to risks for want of due care on their own part. Plaintiff had the right to make use of Eighth street, and to go upon and across defendant's track thereon, for the purpose then in his mind. The way was clear before him. It is the duty of drivers of all vehicles on streets to keep a. reasonable lookout ahead, and their teams so well. in hand, as to be able to slow and stop promptly, to avoid injury to others coming suddenly in their way. Pedestrians on the streets may well rely, to some extent, on the performance of this duty by drivers of vehicles behind them. In this respect the case of appellant and its servants in charge of its cars differs materially from that of locomotive railway companies and their train men. And that of appellee is materially different from that of one who, seeing or otherwise knowing that a car is coming, and is or may be dangerously near, knowingly takes the risk of an attempt to cross its track in advance of it. Hence, it is useless to cite opinions as to what duty requires, or what constitutes negligence in cases where all the facts affecting the question were undisputed, or where the court was finding upon the question of negligence, in fact, from the evidence in the case before it. Within the range of its right to review the evidence, this court would be apt to follow the conclusions reached by others upon like proof. But it knows of no precedent upon which it could hold as law or find as fact that in failing to look around, or back, for the car by which he was injured, if he did so fail, before he went onto the track, appellee showed a want of ordinary care for his own safety. Clearly it was a question of fact for. the jury, and we can review the evidence only to determine whether it is sufficient to support their finding. Three juries have agreed in it, and we are of opinion the evidence would not justify a reversal.

Divers rulings of the court are complained of as erroneous. We do not understand the second instruction given for plaint-

iff as assuming a liability on the part of the defendant in this case. It states the rule of *respondeat superior* in the abstract, and applies it to this case only hypothetically. We find no evidence of negligence on the part of the parents of plaintiff in allowing him to be on the sidewalk or street, nor does it seem to be urged in argument as a ground of defense; but the capacity of the plaintiff to take care of himself and his culpable carelessness are insisted on. He was a bright, intelligent boy, nearly a year past the age when children are allowed by law to attend the public schools, and his capacity was not denied on his own behalf. Moreover the ninth instruction asked by the defendant, given, fully presents the matter of the parents' negligence as a ground of defense and the law in relation to it. Its omission from the plaintiff's instruction could not have prejudiced the defendant.

The tenth instruction does not seem sensible. The phrase, "notwithstanding said negligence of said driver" could hardly have been what was intended. The eleventh makes negligence a question of law, and so invades the province of the jury.

The twelfth is given, in substance, in several others. The thirteenth holds that plaintiff's failure to look, if by looking he could have seen the car approaching, and would have been able to keep out of its way, was negligence, if he had capacity to understand it was dangerous to run in front of it. Such is not the law in this State, according to our understanding. It was but evidence of negligence, the weight of which was to be determined by the jury. The fourteenth makes the allegation as to the rate of speed in comparison with that which is usual on similar railways in other cities material, which we have already considered.

It is said that the proper foundation was not laid for the admission of the evidence introduced to impeach the car driver. And perhaps in technical strictness it was not; but if so, we think the testimony was not of sufficient importance to make the error a serious one. The real issue was upon the conduct and not upon the condition of the driver, which might account for, but could not change the facts of his actual conduct.

What he said after the car stopped was not admitted as narrative of a fact which had already occurred, but to prove a condition then existing, which from its nature tended, in connection with other proof, to show a want of proper care on his part from the beginning.

We find nothing in the affidavits in support of the motion for a new trial that is not fairly met and overcome by the counter affidavits, nor anything in the amount of the damages assessed to warrant our interference.

*Judgment affirmed.*